Good morning, Your Honors. If I could... Wait just a second. Okay. Let counsel get to his seat and get a chance to get his books all spread out there. Let him mount his horse. Yeah, let him mount his horse. Then you can... That was an adequate adjective there, or at least play on words for an Idaho judge. He wants some coffee, too, so, oh, just water, sorry. Court clerk didn't help him out quite as good. All right. You ready? Give it to us. Ready to go? All right. Tom looks happy, so let's go ahead and go. Good morning, Your Honors. As I indicated, if I could reserve a minute for rebuttal, I'd appreciate to do that. If it pleases the Court, Mark Bradshaw.  Actually, Prime Health Care Services of Los Angeles, but Prime Health Care Services of Los Angeles. Prime Health Care Services, and what Prime's trying to do here today is protect a very important right, and it's a right that was created by a judicial act. It was a financing order that was created early in the bankruptcy case of Brotman v. Appellant, and it's significant for a number of reasons, not least of which that Prime relied on it, frankly. That order, because that order existed before Prime came in the case. Capital source was the original lender to Brotman, and Prime came in and acquired capital source's rights. Not surprisingly, before Prime did that, it looked at that order and said, okay, what is it, what are the duties, and what are the benefits that go along with that order? It didn't conferred a lot of rights, and one of those, of course, was the right to repayment of a certain amount of debt. Now, there's a certain, there's an important carve out to that, which is there's a creditor's committee that can object to the amount of the claim, and we're really talking about an undisputed $20 million and a, let's say, disputed $8 million. Well, but the plan did never say they were going to get their 8. The plan said it can't exceed $22 million, didn't it? Correct. A combination of a plan and a financing order. Can't exceed $22 million. $22 million, well, let's be specific, because the financing order, that was the second financing order, if you will, because the first financing order was the cap source one at the beginning of the case, and then the plan confirmation, we can more or less say, is at the end of the case, or at least at the end of the important part. In the middle there was a financing, a take out financing with JHA, and that order said that Prime's claim cannot exceed $22 million in a secured, of a secured basis, and Prime was ultimately paid $20 million, in round numbers, $20 million. Oh, yeah, that's right. Where that leaves Prime is understanding the interim financing order. Okay, that interim financing order was entered, and the appellee correctly points out that we didn't appeal that. A couple of reasons for that. One is, you got paid $20 million. We wanted to get paid $20 million, and we weren't. That's a good amount to get paid. It's a good amount of money. And, in fact, it's all the secured debt and all the interest. The only thing that's not paid, as I understand it, is the default interest and extra fees. Some noncompliance fees, correct. Right. Some additional fees, but, you know, not insignificant in numbers. If they were all allowed, that could be as much as a, well, this ain't round numbers, it could be as much as $8 million. Not insignificant. The point, of course, is that Prime's never really had its day in court with respect to the amount that it's owed. It could be a little more than $8 million. It could be zero. The objection to the claim, the committee's objection to the claim, has still not been heard by the Bankruptcy Court after all these years. So, I stand before you saying, I think Prime is owed. Well, nobody ever appealed anything in this. Nobody ever did anything about it. I mean, it went all the way through, even to confirmation. Well, correct. But there is still pending that claim objection, and that's the only vehicle that determines ultimately whether Prime would be owed zero or, let's say, $8 million. And the reason that's important for this mootness issue is, again, that Prime hasn't had its determination whether this right, this important right, is gone. And if Prime isn't allowed to test and see whether it has allowed those figures, essentially, it'll never have that day. It'll never know. Well, as I understand it, Prime did file a motion for a stay pending appeal, correct? That's correct. Two, to be exact. One in front of the Bankruptcy Court, and one in the District Court. And both were denied? Correct. And the District Court said it's denied because it's a failure to show any likelihood of success on the merits? That's understood. And, you know, that strike is out there against me. I understand that. Obviously, we have a very different view of the merits on that. Well, I mean, I'm not suggesting my view of the merits at all. I'm just suggesting at this point that's something that's directly in front of me. That is correct. And then there was a motion to dismiss, as that could be constitutionally and statutorily moot. And I expect Prime was there for that. The issue was briefed. Yeah. And the District Court ruled that the issue was over. And for a couple of reasons. One, the State Pending Appeal was sought and it was denied. Obviously, that's an impediment. And the plan, I think the parties agreed even back then, that it was substantially consummated, which is a sort of a nuance of bankruptcy that doesn't directly relate to mootness, but it's still arguably relevant.  Frankly, that's a strike, I guess. But the proposal to me, that's maybe the strongest strike against you. Once a plan is confirmed, we all like to think that if it's consummated, go ahead and execute on the plan, but that should be the end of it. Agreed. And I will tell you, Your Honor, I do probably more Chapter 11 debtor work than I do lender work, and I like to get plans substantially consummated. And there's reasons for that. One, of course, is that then you can file final decree, your case is closed, you can tell the world you're out of bankruptcy, you no longer have to pay fees and file reports. There's a lot of good things that happen with substantial consummation. But Brotman would have this Court believe that that should be game, set, and matched on a mootness appeal. And I don't think the circuit's ever gone that far. So what part of mootness do you want us to look at? Are you really arguing that this case isn't moot on an equitable mootness standard, or are you talking about a constitutional mootness standard? On an equitable mootness standard, because even under the case that Brotman says is the seminal case, the Robert Farms case, where it really gets into a balancing test. So we're really looking at impractical or inequitable? Correct. And what's my standard of review on impractical or inequitable? I mean, I got one court saying it's over. You do. You have the district court saying it's done. Now, what degree of deference do I owe to the district court? Well, my understanding of the review of that particular order is it's a de novo review. So no, I don't owe any deference? Well, no one's going to say that the district court is not a learned judge. He is. If I have any issue with it, I would have liked to have the opportunity for oral argument. But it was ruled on the papers. He's an experienced justice. And there's no issue with that. But he still made an error here. And that's the problem. That's why it should be reversed. Because he basically said, there's nothing I can do. I don't think it was, there's nothing I want to do. I think he said, there's nothing I can do. Because there's no stay, and there's substantial consummation. But that's not the end of it. There is this balancing. It is a, is the court able to fashion some relief, taking into consideration all of the parties? Is there some relief that can be fashioned? And the district court takes the view that Brotman takes, which is there's nothing that can be done. Well, a matter of UNR industries would suggest that I should be reluctant to grant the relief after the plan of reorganization has been implemented. And should only do so when the relief would not require reversing complex transactions or unduly affect third party rights. Would you agree with that? I would agree with that. So, tell me, how do I get around the issue with the investors? It seems to me that the investors, shareholders, contributed $3.5 million to pay unsecured creditors. They then took over the company. And if I give you extra loan, that loan would subordinate their contribution to the company. And the shareholders knew of the plan and knew what was going on. So, why would that not unduly affect their rights? All we're talking about here is whether those shareholders, the shareholders have an equity interest, which of course is the lowest priority. I understand. They're lower than anybody except you, if I give you some money. Correct. Which ironically also means that they're lower than unsecured creditors. Well, I understand that. That's why I started with them. I can work my way up the ladder, but we're talking about all third parties. So, the shareholders are one third party I want you to think about. So, we have this odd situation where vendors that were dealing with this hospital prior to the bankruptcy, oh, bad news, you know, your customer filed bankruptcy. But don't worry, you get a claim in bankruptcy, you get something. Whereas, Prime that actually has an order on a post-bankruptcy financing says, you get less than unsecured creditors. You thought you had an order. Forget about contract rights pre-bankruptcy. You have nothing. You have absolutely no remedy. No admin claim, no secured creditors. Actually, you're not answering my question. That has nothing to do. I can talk about unsecured creditors all I want because I've been at this a time or two. But I'm talking about the shareholders who contributed $3.5 million. Correct. So, the net effect is if that Prime could have an opportunity to say it is owed some amount of money. Why? Why should these shareholders, if I don't want to unduly affect the third party rights, why should I force these shareholders in this situation, based on everything that's gone on, to be subordinated in any amount to your loan? And the key, I think, to the court's comments is the any amount. I agree. What is unduly? I agree. $8 million might be. We don't know. This debtor could be sitting on $100 million. But $8 might not be. But I'm precluded from determining whether it's $8 million, zero, or anything in between. Well, I think if we didn't have shareholders in here, your claim might be a little... I mean, I could go to unsecured creditors, but that's why I started with shareholders and your time was done because it seems to me that is a third party that is unduly affected by paying out $1 because they contributed $3.5 million to get rid of all the unsecured creditors in this transaction and you got, and the plan says, as best I can tell, not exceeding $22 million. Now, that's my question. You got 50 seconds. We're seven seconds over. Give me a good reason why I should do that. Because where I guess you and I disagree is on whether, if my client ultimately is determined to be owed, let's say, $8, because your Honor said any amount, that that would unduly burden these shareholders that have come in post-confirmation. I appreciate your candor, really. Thank you. Good morning, Judge Smith, and may it please the Court. This is an appeal from the District Court's dismissal, obviously, if the confirmation order is moved, and we believe the order of the District Court should be affirmed for two distinct reasons, both under Roberts Farms, which I think everyone agrees is the seminal Ninth Circuit case on newtness. The first reason, Your Honor, is that Prime did not seek a stay beyond the District Court, and under Roberts Farms, the Court enunciated as one of its tests that the appellant seek a remedy through stay, all the way up, in fact, under Rule 51, to the Circuit Justice. In this case, Prime abandoned its stay request at the District Court, and thereby deprived this Court of an opportunity to take a preliminary look at the merits, and thereby allowed all the parties to change their position in reliance on the confirmation order. Second, Your Honor, under the alternative holding of Roberts Farms, that the plan is substantially consummated, and it is not possible to grant effective relief, to use the words of Roberts Farms, for all concern, or to use the words of this Court's decision in Baker and Drake, a decision I believe that Judge Fletcher authored, whether the relief is practical or equitable. And in this case, the relief is impossible for all concerned, or impractical or inequitable under that standard, and that's because all the parties relied on the confirmation order and changed their position. And this is not a case, Your Honor, where the parties changed their position in order to manufacture movement, so there was some subterfuge. The Brotman was in effect compelled to consummate its plan. As Prime points out in its brief, the debtor and possession loan that Prime at that point had acquired and held had matured and was in default, and Prime had no reliable source of financing other than to consummate the plan and go forward with the plan. Your Honor, Prime makes much of the fact that it, quote, didn't have its day in court, but Prime never objected to the procedure by which its claim was determined through non-impairment. Obviously it objected on the merits, and there was substantial argument back and forth in briefing and declarations before the bankruptcy court, but it never argued that it was improper to have the amount of its claim determined under 1124 through the confirmation proceeding. And that is what distinguishes this from some of the other cases, that this was an integrated part of the plan. Let me ask you a question. Isn't the failure to obtain a stay only relevant if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from? Your Honor, that's... Isn't that what Roberts Farms says? That's the language of Roberts Farms, Your Honor, but it... And, therefore, if the stay has not been obtained, the lack of a stay is only fatal if it causes a situation where the relief would be inequitable. That is true, Your Honor. I mean, I'm just looking at what my notes are from Roberts Farms. But the circuit in that case made a point of articulating this as a separate standard. And so I think the standard of inequitable, if you will, or third-party reliance, or the measure of the showing that the debtor would have to make is different if the appellant didn't even seek a stay. And so the... You think the fact they didn't seek the stay makes any difference in the analysis? Your Honor, I think it is an alternative basis to affirm because had they come to this court and requested a stay and made their arguments with respect to Entz-White and the other cases that we relied on for the non-impairment, this court would have had an opportunity to test those arguments. The bankruptcy court regarded itself as bound by Entz-White. The district court didn't articulate a point of view, but only this court could say that Entz-White is no longer good law. And so therefore I think it was important for Prime to come to this court as well. But, Your Honor, this is perhaps a sidetrack and not necessarily... Well, it's one of your arguments and the other argument goes to where counsel and I were discussing. That's correct, Your Honor, and I'm happy to talk about those issues as well. There's one thing that I would like to clarify with respect to the standard of review. The standard review is, of course, de novo, and that's what the cases say. But that's maybe a little simplistic because there is deference to any fact-finding that happened below. And in this case, the district court's findings with respect to what would happen were the order reversed. And with respect to the bankruptcy court's findings, that the feasibility of the plan hinged on the reversal of the noncompliance fees are, I think, important considerations. Do you think that's a finding of fact? I mean, I hear the argument. I let him get away with de novo review because I knew that's where we were going to go. But I guess my real worry is I'm not sure that the bankruptcy court's finding in that particular matter is a finding of fact. Well, I'm talking about the district court now, Your Honor. Oh, sorry. I said bankruptcy. I'm in district. Yes, Your Honor. Well, I think obviously this Court, through de novo review, reserves full plenary power to review the relief ordered and rebalance the equities under its decisional law. And so I'm certainly not challenging that or suggesting that the Court is constrained in any way. But I do think that the fact that the district court made these findings about what the impact would be is material to this Court's determination. And obviously it reserves plenary power to rebalance the equities or review the equities in that particular case. Well, I'm some interested in that, and I think all three of us should be some interested because we should give deference where we should, especially when we've got one of those sitting right here with us. And we don't want him to think we're not taking that full into responsibility. That was the reason for my question. On that point, I'd just like to add a little question to that. You opposed the request to stay the confirmation process. And you won that battle, and the stay was denied, and then the confirmation occurred. And now you come in and say, but it's too late because there's been a confirmation, and now it's too late. We can't do things downstream. But we're there because isn't that true? We're partly there because you avoided or prevented the stay of that confirmation so that you could make the argument it's too late now because we have our confirmation. Well, yes, Your Honor. Well, let me make a couple of points on that. The first is that when we opposed the stay, we were very open that we thought that the appeal would become moot if we were allowed to consummate. So we didn't go to the district court. Well, that may have been true. Were the shareholders, the prospective shareholders, aboard and watching all of this when they made the decision to invest $3.5 million? The shareholders, the lenders, all parties were aware of the stay request, were aware of the pleadings that we filed in opposition to that. They were aware of the request for the $8 million to be added into this confirmation situation? Oh, yes, Your Honor. Yes, Your Honor. Well, then, why wouldn't that lessen somewhat the equities of their position? Because yes, they may be the victims if it's granted. They may be the victims of it, their being the lowest level of credit, whatever it is. But they went into it with the full vision 180 degrees. They could see the hazard that they were looking at so it wouldn't like they got jumped, punched in the side, blindsided. Your Honor, it's really a question of the importance that this court and other courts have placed on the desire to have successful reorganizations and the recognition that if the threat of appeal by someone who's disappointed with part of the plan process would disrupt the reorganization, prevent everybody from consummating, then you wouldn't be able to have successful reorganizations. We wouldn't have been able to get the Jewish Home for the Aging or Gemino or shareholders to commit if they understood that their appeal was required for anyone to pursue their appeals. Isn't it true that when this $8 million was allowed, it was a post-bankruptcy order by the bankruptcy court, and in that order, granting the $8 million claim to come into consideration, the court said this order granted us $8 million, and then they listed about 8 or 9 events that wouldn't upset that order. Even if the world came to an end, the order would still exist. By its own terms, it's indefeatable. But then another judge immediately defeated it. No, it was the same judge, Your Honor. Oh, he defeated his own order. Well, yes, she did, Your Honor, and this was an order that was entered in advance of Judge Bloubon. This was an order that was entered in advance of crimes involvement. So this was a negotiated order with capital source, and there are two aspects to that order that I think are very important. The first is that, although it's said that these various fees and default interest and so forth were an allowed claim, that the debtor agreed it was an allowed claim, it carved out and said the committee, nevertheless, had the right to challenge or reverse those fees and interest. So at all times, and there was a timely challenge on file, as Ms. Ratner said. Well, that may be true, but it sure wasn't in the order of the court. It didn't say, now, later a committee may upset this order. Yes, it does, Your Honor. Did it say that? Paragraph 22 of the order said, reserves the committee the right to challenge those fees. And our plan I apologize. I'm out of time, Your Honor. May I? We'll let you answer his question. Thank you. If we take you over, you don't have to quit. Yeah, it's my fault. Thank you, Your Honor. The order preserved this right to the challenge, and there was a challenge that had been continuously made through time. And the committee was a co-proponent with the debtor of the plan of reorganization. It was a plan pursued by the committee and the debtor jointly. So the plan was, in effect, an implementation of the committee's rights under paragraph 22 of the order to challenge those fees and default interest. Thank you. Thank you very much. Thank you for your argument. Let's see. You had a minute or so left, Counselor. I wasn't sure if I'd already used that up. Your Honor, unless the court has any questions, I have nothing else to add to the presentation. Thank you. And I would say to both of you, excellent job. Well presented. Thank you, Your Honor. Thank you so much. I'm especially sad to him because he's got associates on the back row watching. Thank you very much. Case 956907 Brodman Medical Center versus Prime Healthcare Services is submitted.
judges: Brewster, Fletcher B. , Smith N. R.